UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUAN HERNANDEZ,

Petitioner,

-vs-

JAMES CONWAY, Superintendent,

Respondent.

---

**DECISION AND ORDER**
**No. 03-CV-0852(VEB)**

## I. Introduction

Juan Hernandez ("Hernandez" or "petitioner") has filed a *pro se* petition (Docket No. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on March 15, 2001, in Ontario County Court on drug-related offenses. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c). *See* Docket No. 6.

## II. Factual Background and Procedural History

The conviction here at issue stems from several sales of drugs (heroin) by petitioner to informants in police-arranged drug buys and an incident of reckless driving that occurred on January 6, 2000; February 18 and 29, 2000; March 1 and 2, 2000; and April 6, 2000. As a result of his involvement in these incidents, Hernandez was indicted by an Ontario County Grand Jury as follows:

- Count One: Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law 220.39(1)) on February 18, 2000;
- Count Two: Criminal Possession of a Controlled Substance in the Seventh Degree (intent to sell) (N.Y. Penal Law § 220.03)) on February 18, 2000;
- Count Three: Criminal Sale of a Controlled Substance in the Third

Degree (N.Y. Penal Law § 220.39(1)) on February 29, 2000;

- Count Four: Criminal Possession of a Controlled Substance in the Seventh Degree (intent to sell) (N.Y. Penal Law § 220.03) on February 29, 2000;
- Count Five: Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law 220.39(1)) on March 1, 2000;
- Count Six: Criminal Possession of a Controlled Substance in the Seventh Degree (intent to sell) (N.Y. Penal Law 220.03) on March 1, 2000;
- Count Seven: Criminal Possession of a Controlled Substance in the Third Degree (intent to sell) (N.Y. Penal Law 220.16(1)) on March 2, 2000;
- Count Eight: Criminally Using Drug Paraphernalia (glassine envelopes for the distribution of narcotics) in the Second Degree (N.Y. Penal Law § 220.50(2)) on March 2, 2000;
- Count Nine: Criminal Mischief (damaging a police vehicle) in the Third Degree (N.Y. Penal Law § 145.05) on March 2, 2000;
- Count Ten: Reckless Driving (Vehicle & Traffic Law § 1212) on March 2, 2000; and
- Count Eleven: Criminal Possession of a Controlled Substance in the Third Degree (intent to sell) (N.Y. Penal Law § 220.16(1)) on April 6, 2000.

Petitioner, through counsel, moved for, *inter alia*, severance of the various counts of the indictment pursuant to New York State Criminal Procedure Law ("C.P.L.") § 220.20(3) and for dismissal of counts seven, eight, nine, ten, and eleven of the indictment. Ontario County Court (Harvey, J.) heard argument on February 14, 2000, at which time he denied the severance motion. *See* Exhibits to Respondent's Answer ("Resp't Ex.") G. Judge Harvey denied the motion to dismiss in a separate decision and order. *See* Resp't Ex. A at 53. Following a suppression hearing on March 7, 2001, the trial court dismissed count eleven of the indictment finding that there was no probable cause to stop petitioner. Hernandez was tried before a jury on March 14 and 15, 2001. At the close of the prosecutions's case, the trial court dismissed count seven of the indictment charging third degree criminal possession of a controlled substance on

March 2, 2000. *See* Resp't Ex. I at 334. The jury returned a verdict convicting Hernandez on eight counts charging drug-related offenses: three counts of criminal sale of a controlled substance in the third degree; three counts of criminal possession of a controlled substance in the seventh degree; one count of criminally using drug paraphernalia in the second degree; and one count of reckless driving. He was acquitted of count nine, which charged reckless driving (damaging a police vehicle).

Hernandez was sentenced as a second felony offender on March 28, 2001, as follows:

- Count One (criminal sale on February 18, 2000) – 5 to 10 years;
- Count Three (criminal sale on February 29, 2000) – 9 to 18 years, to run consecutively to the sentence for Count One;
- Count Five – 5 to 10 years, to run concurrently with all of the sentences;
- Counts Two, Four, and Six (criminal possession with intent to sell) – 6 months, to run concurrently with all of the sentences;
- Count Eight (criminally using drug paraphernalia) – 60 days, to run concurrently with all of the sentences; and
- Count Ten (reckless driving) – 30 days in the local jail, to run concurrently with all of the sentences.

*See* Resp't Ex. J at 15-16.

Represented by new appellate counsel, Hernandez appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, arguing that (1) the sentence was harsh and excessive; (2) it was error to deny petitioner's motion to sever; (3) the verdict was against the weight of the evidence; and (4) trial counsel failed to provide effective assistance based on his failure to call a witness. *See* Resp't Ex. L. Hernandez filed a *pro se* supplemental appellate brief arguing that he was denied a fair trial because an interpreter was not appointed. *See* Resp't Ex. M. On June 14, 2002, the Appellate Division granted his appeal to the extent it found the consecutive sentence to be excessive. *See* Resp't Ex. N. As such, the court

modified petitioner's sentence by directing that all terms of imprisonment run concurrently with each other, making the aggregate sentence 9 to 18 years. *See id.* All other claims were denied. Petitioner sought leave to appeal as to all issues; this was denied by the New York State Court of Appeals on August 30, 2002. *See* Resp't Ex. O.

On or about January 18, 2003, petitioner filed an application for a writ of error *coram nobis* asserting that his appellate counsel failed to provide effective assistance. The writ was denied on March 21, 2003, and leave to appeal was denied. *See* Resp't Exs. S, T, and U.

This federal habeas petition followed, in which Hernandez raises the following grounds for relief: (1) the sentence was harsh and excessive; (2) it was error to deny petitioner's motion to sever; (3) the verdict was against the weight of the evidence; and (4) trial counsel failed to provide effective assistance based on his failure to call a witness. Respondent answered the petition on January 18, 2004, and raised the defense of non-exhaustion as to all four of petitioner's claims. *See* Docket Nos. 3, 4.

For the reasons set forth below, the application for a writ of habeas corpus is denied and the petition is dismissed.

## III. Discussion

### A. Standard of Review

The filing of Hernandez's petition post-dates the amendment of the federal habeas corpus statute on April 24, 1996, by the enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). AEDPA has "significantly curtailed the power of federal courts to grant the habeas petitions of state prisoners." *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Pursuant to AEDPA, when a state court has

adjudicated a habeas petitioner's claims on the merits, habeas relief may not be granted unless the state court's holding was contrary to, or was an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, or was based on unreasonable determination of the facts in light of the evidence presented in petitioner's state court proceeding. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 412-13. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B. Exhaustion**

A court may not issue a writ of habeas corpus unless it appears that the petitioner has exhausted the remedies available to him in the state courts. 28 U.S.C. § 2254(b)(1)(A). To fulfill the exhaustion requirement, a habeas petitioner must have fairly presented the substance of all his federal constitutional claims to state court. *See Ayala v. Speckard*, 89 F.3d 91 (2d Cir. 1996). The Second Circuit has interpreted the "fair presentment" requirement to mean that the petitioner has put the state court on notice that a federal constitutional claim was at issue. *See Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), *cert. denied*, 464 U.S. 1048 (1984). A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." *Daye*, 696 F.2d at 194; *accord*, *e.g.*, *Strogov v. Attorney Gen'l*, 191 F.3d 188, 191 (2d Cir.1999).

Respondent concedes that Hernandez presented on direct appeal the four issues he challenges in his habeas petition but argues that "none of the arguments raised federal constitutional issues[;] rather, the arguments raised on appeal were based on state law." Respondent's Memorandum of Law ("Resp't Mem.") at 6 (Docket No. 4). Furthermore, respondent argues, "even assuming that the petitioner did in fact exhaust one of his federal claims, because the petition would contain both exhausted and unexhausted claims, the entire petition must be dismissed." *Id.* at 8 (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).[1]

---

[1] An exception to the exhaustion requirement set forth in *Rose v. Lundy*, *supra*, has been provided by statute. Now, pursuant to the 1996 amendments to 28 U.S.C. § 2254, a district court may, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Section 2254(b)(2) allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." *Steele v. Walter*, 11 F. Supp.2d 252, 257 (W.D.N.Y. 1998) (quoting *Cowan v. Artuz*, 1996 WL 631726, at *5 (S.D.N.Y. 1996) (quoted in *Loving v. O'Keefe*, 960 F. Supp. 46, 49 (S.D.N.Y. 1997)).

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. *Naranjo v. Filion*, No. 02Civ.5449WHPAJP, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (footnote omitted) (citing *Hammock v. Walker*, 2002 WL 31190945, at *2 (W.D.N.Y. Sept.17, 2002); *Cruz v. Artuz*, No. 97-CV-2508 (FB), 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002); *Pacheco v. Artuz*, 193 F. Supp.2d 756, 761 (S.D.N.Y. 2002); *Rowe v. New York*, No. 99 CIV 12281 GEL, 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002); *Love v. Kuhlman*, No. 99CIV11063DLCRLE, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001); *Shaw v. Miller*, No. 99 CV 5020(FB), 2001 WL 739241, at *2 n. 2 (E.D.N.Y. June 26, 2001); *Santana v. Artuz*, No. 97 CIV 3387 RCC RLE, 2001 WL 474207, at *3-4 (S.D.N.Y. May 1, 2001)). A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." *Id.* (quoting *Hernandez v. Lord*, No. 00 Civ. 2306(AJP), 2000 WL 1010975, at *4-5 & n. 8 (S.D.N.Y. July 21, 2000)) (internal quotations omitted) (analyzing the diverging views without deciding which standard is appropriate) (Report and Recommendation); *see also Padilla v. Keane*, No. 00 Civ. 1235VM AJP, 2000 WL 1774717, at *3 (S.D.N.Y. Dec. 4, 2000); *Orraca v. Walker*, 53 F. Supp.2d 605, 611 (S.D.N.Y. 1999); *Basnight v. Keane*, No. 99-CV-5907(FB), 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001) (articulating "nonmeritorious" standard rather than "patently frivolous," although claims failed either standard). The Second Circuit opted for the "patently frivolous" test in *Jones v. Senkowski*, No. 00-2145, 2001 WL 1230800, at *4 (2d Cir. Oct. 5, 2001), but that decision was later vacated and withdrawn. *Naranjo*, 2003 WL 1900867, at *8 n. 14 (citing *Jones v. Senkowski* No. 00-2145, 2002 WL 246451 (2d Cir. May 22, 2002), *amended by Jones v. Senkowski*, No. 00-2145, 42 Fed. Appx. 485, 2002 WL 1032589 (2d Cir. May 22, 2002), *cert. denied*, 537 U.S. 1177 (2003)).

The Court will first address respondent's "fair presentment" argument. After reviewing Hernandez's appellate brief filed in state court, the Court agrees with respondent that the case citations employed therein were only to state case law. The Court turns first to the claim that the verdict was against the weight of the evidence. This claim derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68,

---

Respondent also urges that should the Court find any of Hernandez's claims to be unexhausted, it should dismiss them pursuant to 28 U.S.C. § 2254(b)(2). As discussed below, all of Hernandez's claims fail either the "patently frivolous" or "nonmeritorious" test, so it also is appropriate for the Court to rely upon 28 U.S.C. § 2254(b)(2) in order to deny the habeas petition in its entirety, even if it should find that Hernandez has failed to exhaust state remedies on any of his claims. Furthermore, all of Hernandez's claims fail under a pre-AEDPA standard of review. Because they cannot pass muster under a pre-AEDPA standard, they necessarily cannot provide a basis for habeas relief under the more stringent, post-AEDPA standard of review. *See Kruelski v. Connecticut Superior Court For Judicial Kruelski v. Connecticut Superior Court For Judicial Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003) ("Comity, as recognized in the AEDPA, mandates that lower federal courts yield to many state court interpretations of federal law even when such interpretations are wrong, so long as they are reasonable. But just as state courts enjoy a special expertise in matters of state law, by which federal courts often wish to be guided, so federal district and circuit courts have a particular knowledge of federal law, which state courts faced with federal questions may want to consult. . . . [I]t is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one."); *Messiah v. Duncan*, 435 F.3d 186, 197 (2d Cir. 2006) ("We need not determine here whether Messiah's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims would fail even if we apply the less deferential, pre-AEDPA standard.").

112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255 (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same); *Garbez v. Greiner*, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); *Lemons v. Parrott*, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); *McBride v. Senkowski*, 98 Civ. 8663, 2002 WL 523275, at *4 n. 2 (S.D.N.Y. Apr. 8, 2002) (holding that a weight of evidence is not cognizable on habeas review); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) (A "'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted); *Peralta v. Bintz*, 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises

no cognizable federal issue, his petition must be denied."); *Kearse v. Artuz*, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); *Rodriguez v. O'Keefe*, 96 Civ.2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on habeas review."), *aff'd*, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), *cert. denied*, 522 U.S. 1123 (1998); *see also*, *e.g.*, *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

Arguably, then, it is impossible for a habeas petitioner to present a "weight of the evidence" claim as a federal constitutional issue in order to exhaust it. Here, even if petitioner were to return to state court to attempt to exhaust the claim, he would face an absence of corrective process. Thus, the claim must be deemed exhausted because Hernandez no longer has any available remedies in the New York state courts. *See* N.Y. Court Rules § 500.10(a) (a defendant in New York has only one direct appeal); N.Y.Crim. Proc. Law § 440.10(2)(a), (c) (motion to vacate must be dismissed where claim was raised on direct appeal, or sufficient facts appeared in record to have permitted claim to be raised on direct appeal, but defendant unjustifiably failed to do so); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Of course, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim," *Gray v. Netherland*, 518 U.S. 152, 162 (1996). A habeas petitioner's forfeiture

in state court of his federal claims bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Grey*, 933 F.2d at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977)). Here, Hernandez has not alleged cause or prejudice, and neither is present on the record before this Court. Hernandez also has not made the showing of "actual innocence" necessary to warrant the "fundamental miscarriage of justice" exception to the procedural default rule. *See Schlup v. Delo*, 513 U.S. 298, 314-16 (1995). Accordingly, petitioner cannot overcome the procedural default of this claim.

Respondent also argues that even if the claim were construed as raising a "sufficiency of the evidence argument," it still lacks merit and does not warrant habeas relief. The Court recognizes the principle that complaints of *pro se* petitioners are to be considered liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, some habeas courts have construed "weight of the evidence" claims as "insufficiency of the evidence" claims. *E.g.*, *Davis v. McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim); *Wilson v. Senkowski*, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *8 (S.D.N.Y. May 7, 2003) (denying "weight of the evidence-claim as not cognizable on federal habeas review but also "broadly interpret[ing]" petitioner's "weight of the evidence" claim to raise a "sufficiency of the evidence claim") (Report and Recommendation ) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Here, because respondent has provided a substantial argument that the evidence against petitioner was legally sufficient, under the standard set forth in *Jackson v. Virginia*, 443 U.S.

307, 319 (1979), and in keeping with the precepts of *Haines v. Kerner*, 404 U.S. 519, *supra*, the Court will address the merits of petitioner's "weight of the evidence"claim as a "sufficiency of the evidence" claim below.

With respect to the severance issue, petitioner again cited only state case law on direct appeal. However, petitioner appears to have a colorable argument that the severance fact pattern involved here is well within the mainstream of constitutional litigation, and was thus properly presented to the state appellate courts under *Daye*. *See*, *e.g.*, *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (where habeas petitioner argued that claims had been impermissibly joined, Second Circuit stated that "'joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial'") (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976), *cert. denied*, 430 U.S. 910 (1977)), *cert. denied*, 511 U.S. 1059 (1994). Thus, the Court is inclined to find that Hernandez's denial of severance claim is exhausted; however, because the claim is plainly without merit and is easily disposed of on that basis, the Court need not address the fair-presentment issue. *Accord*, *e.g.*, *Davis v. Kelly*, 2 F. Supp.2d 362, 365, 366-67 (W.D.N.Y. 1998).

The Court agrees with respondent that petitioner's claim that his sentence is harsh and excessive is unexhausted because the constitutional nature of the claim–if there is one–was not "fairly presented" to the state courts on direct appeal. Petitioner's appellate brief presented his excessive sentence claim in terms of state law, invoking the power of a state appellate court to reduce sentences in the interest of justice under C.P.L. § 470.15(6)(b). However, requesting that a state court invoke its discretionary authority to reduce a sentence under C.P.L. § 470.15(6)(b), without more, is not enough to alert the court that the claim is of a federal constitutional

dimension. *Accord*, *e.g.*, *King v. Cunningham*, 442 F. Supp.2d 171, 181 (S.D.N.Y. 2006) (holding that petitioner's "excessive sentence" claim was unexhausted because it was only presented to the state court on appeal as a request for a reduction in the sentence in the interest of justice under state statutory law, C.P.L. § 470.15(6)(b)) (citations omitted).

The harsh and excessive sentence claim must be deemed exhausted because Hernandez no longer has any available remedies in the New York state courts. See N.Y. Court Rules § 500.10(a); N.Y.Crim. Proc. Law § 440.10(2)(a), (c); *Grey v. Hoke*, 933 F.2d at 120. The procedural bar that requires the Court to deem the claim exhausted also provides an independent and adequate state-law ground for the conviction and sentence, and therefore results in a procedural forfeiture of the claim. *Gray v. Netherland*, 518 U.S. at 162. Here, Hernandez has not alleged cause or prejudice to excuse the procedural default, and neither is present on the record before this Court. Hernandez also has not made the showing of "actual innocence" necessary to warrant the "fundamental miscarriage of justice" exception to the default. *See Murray v. Carrier*, 477 U.S. at 495-96. Accordingly, Hernandez cannot overcome the procedural bar to this claim. Because respondent has argued the merits of the claim, and in the interests of judicial efficiency and finality, the Court will address below the substance of the claim so as to dismiss it.

Finally, the Court turns to the issue of whether petitioner's claim of ineffective assistance of trial counsel is exhausted. When briefing the claim on direct appeal, appellate counsel cited only to New York state cases such as *People v. Baldi*, 54 N.Y.2d 137 (1981), a case that pre-dates *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court case articulating the federal standard governing ineffective assistance of counsel claims. *People v. Baldi* does note that "[t]he right to the effective assistance of counsel is guaranteed by both the Federal and State

Constitutions[.]" *Baldi*, 54 N.Y.2d at 146 (citing U.S. CONST., amend. VI; N.Y. CONST., art I, § 6). The remainder of *People v. Baldi*'s discussion of the ineffective assistance of counsel issue focuses on state cases that in turn cite to state precedent, however. Thus, the Court questions whether the state appellate court was put on notice that Hernandez was claiming a violation of anything other than his right, under the New York State constitution, to the effective assistance of counsel. Accordingly, under the Second Circuit's authority in *Petrucelli v. Coombe*, 735 F.2d 684, 689 (2d Cir. 1984) , the Court is inclined to find that the claim is unexhausted. However, it is procedurally defaulted because, although it could technically still be raised in a C.P.L. § 440.10 motion, dismissal would be mandated on the basis of C.P.L. § 440.10(2)(a) due to the fact that it was raised and determined on direct appeal. N.Y. Crim. Proc. Law 440.10(2)(a). Because the Court agrees with respondent that Hernandez's ineffective assistance claim is clearly lacking in merit, the Court declines to decide the fair presentment issue and instead will dismiss the claim on the basis that neither prong of the *Strickland* standard has been met as hereinafter discussed.

**C. Analysis of Claims Raised in Petition**

**1. Denial of the Severance Motion Was Not Erroneous**

"Joinder of offenses rises to the level of a constitutional violation only if it 'actually renders petitioner's state trial fundamentally unfair and hence, violative of due process.'" *Herring v. Meachum*, 11 F.3d at 377 (quoting *Tribbit v. Wainwright*, 540 F.2d at 841; citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). In determining whether a due process violation has occurred, the Second Circuit has stressed the word "actually" because it is "only the consequences of joinder, over which the trial judge has much control, and not the joinder itself,

which may render the trial 'fundamentally unfair.'" *Id.* (citing *United States ex rel. Evans v. Follette*, 364 F.2d 305, 306 (2d Cir. 1966) (*per curiam*) (holding that decision to consolidate charges for trial does not, in and of itself, raise an issue of constitutional dimension), *cert. denied*, 385 U.S. 1016 (1967)). Thus, where a petitioner claims a due process violation based on a trial court's joinder or denial of severance, he must show more than merely the potential for prejudice; he must show that "actual prejudice resulted from the events as they unfolded during the joint trial." *Id.* at 377-78 (citing *Tribbitt*, 540 F.2d at 841).

Hernandez argues that the trial court's failure to sever the counts charging criminal of a controlled substance from the counts alleging criminal mischief and reckless driving was erroneous. *See* Resp't Ex. K at 15. According to petitioner, there was "no language in the indictment to suggest a common scheme or plan" and "no relationship" between the two sets of counts. *See id.* In opposition, respondent points out that counts one through six, which alleged criminal sale of a controlled substance and criminal possession of a controlled substance with intent to sell, were similar in law and properly joined pursuant to C.P.L. § 200(2)((c). On direct appeal, the state appellate court held that the trial court properly denied Hernandez's severance motion because "[c]ertain of the offense were properly joinable pursuant to C.P.L. § 200.20(2)(b)[.][2]" *People v. Hernandez*, 295 A.D.2d 989, 989 (App. Div. 4th Dept. 2002) (citing *People v. Cruz*, 278 A.D.2d 125, 125 (App. Div. 1st Dept. 2000)). Moreover, the court held, the

---

2 "Two offenses are 'joinable' when:

(b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first[.]"

N.Y. Crim. Proc. Law § 200.20(b)(2).

"remaining offenses were joinable pursuant to C.P.L. § 200.20(2)(c),[3] and defendant failed to establish good cause for discretionary severance[.]" *Id.* (citations omitted).

Counts eight through ten all related to petitioner's reckless operation of a motor vehicle. During the commission of the acts forming the basis of these counts, petitioner was observed emptying plastic bags containing what appeared to be a powdery white (*i.e.*, controlled) substance out of the driver's side window of the motor vehicle as he fled the police. After petitioner was stopped and arrested, a glass vial of cocaine was recovered from inside the motor vehicle on the driver's side. A box of glassine bags, commonly used in the packaging of heroin, also was found in the car. Because petitioner was charged, in counts one through six, of possessing heroin with intent to sell it, the proof regarding intent to sell obtained during the pursuit of petitioner while he was committing counts eight through ten, and the subsequent stop and search, was admissible. *See People v. Taylor*, 141 A.D.2d 982 (App. Div. 3d Dept. 1988). Accordingly, joinder of all of the counts of the indictment was proper under C.P.L. §§ 200.20(2)(b) and 200.20(2)(c), as the state appellate court found. (Count eleven was dismissed prior to jury selection, so it is not relevant to the severance analysis.) There was no error of state law here; rather, the trial court was well within its discretion in refusing to grant the severance motion. Furthermore, the jurors were instructed separately on each count of the indictment and told that when they were deliberating, they must consider the proof as to "each charge separately

---

[3] "Two offenses are 'joinable' when:

(c) Even though based upon different criminal transactions, and even though not joinable pursuant to paragraph (b), such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law[.]"

N.Y. Crim. Proc. Law § 200.20(2)(c).

on each date," Resp't Ex. I at 375; *see also id.* at 376, 377, 379. At the close of its charge, the trial court carefully instructed the jury that it "must consider each count separately" and "must consider the evidence with regard to each count separately." Resp't Ex. I at. 387. As respondent points out, the fact that the jury actually acquitted petitioner on one count of criminal mischief in the third degree supports a finding that the jury was able to consider the evidence of each crime separately and negates a finding that petitioner was prejudiced by the joinder.

Because petitioner cannot come close to making the showing of "actual prejudice" required to support a claim that denial of severance resulted in a due process violation, habeas relief will not issue on this claim.

### 2. The Verdict Was Not Against the Weight of the Evidence

#### a. Overview of the Proof at Trial

##### I. Criminal Possession and Sale of a Controlled Substance

Counts one and two of the indictment charged Hernandez with possession of and sale of heroin on February 18, 2000. The prosecution presented evidence from informant Jose Torres ("Torres"), who testified that he participated in a police-arranged drug-buy on that date. *See* Resp't Ex. I at 179-183. Torres testified that he was given $40 by the police to complete the buy, that he was wearing a wire during the transaction, and that he went to petitioner's apartment and bought the drugs there. Investigator Brad Falkey ("Investigator Falkey") testified that on February 18, 2000, Torres was working for the police as an informant buying heroin from drug dealers in the City of Geneva. Resp't Ex. I at 207. Torres was searched prior to executing the drug-buy with petitioner, and was found to have no items of drugs on him. *Id.* Investigator Falkey explained that Torres was fitted with a transmitter, given $40 to purchase the heroin, and sent to

petitioner's apartment. Investigator Falkey testified that Torres was out of his sight for about three to four minutes; when he returned, he handed the officer two packets of what appeared to be heroin. *Id.* at 211.

Counts three and four of the indictment related to Hernandez's possession of and sale of heroin to informant Joshua Buckley ("Buckley") on February 29, 2000. Buckley testified that prior to the drug-buy he was searched by the police, fitted with a transmitter wire, and sent to petitioner's apartment, where he purchased heroin from petitioner. *Id.* at 195-96. Upon completion of the sale, Buckley turned the drugs over to Investigator Falkey. Buckley also completed a police-arranged drug-buy with Hernandez on March 1, 2000; this drug sale formed the basis of counts five and six of the indictment. As in the previous sale, Buckley was searched prior to the transaction and found to have no contraband on him. *Id.* at 220, 299. He was given buy-money, fitted with a transmitter wire, and sent to petitioner's apartment. *Id.* Upon his return, he turned the heroin over to Investigator Falkey. *Id.* at 226, 229.

The forensic chemist who analyzed the substances purchased by the informants testified that the powder contained in the bags received from petitioner was heroin and that the substance found in the glass vial seized from petitioner's car was crack cocaine. *Id.* at 311, 313, 314, 323. The bags of heroin purchased were introduced as exhibits. *See id.* In addition, the prosecutor introduced evidence of the following admissions by petitioner: Investigator Storer, the arresting officer, testified that after Hernandez was read the *Miranda* warnings, he indicated that the heroin was coming from New York City to the Pearl LaBlanca and that the crack cocaine came from the Brooklyn Grocery Store. *Id.* at 277. He told the police that while he was being followed by the police in his car, he threw an "egg" (several grams of heroin in a container carried

internally in a cavity of a person's body) of heroin out of the window to try to get rid of it. *Id.* at 277-78.

The audiotapes of the recordings of the drug sales made from the transmitter wires worn by the informants were submitted as proof at trial; the transcripts were not admitted as evidence but were provided to the jury to review. *See id.* at 223, 225, 328.

**ii. Criminally Using Drug Paraphernalia**

Counts eight and ten of the indictment charged Hernandez with criminally using drug paraphernalia based on his possession of glassine envelopes for the purpose of packaging narcotics for sale. At trial, Investigator Timothy Bour testified that while in pursuit of petitioner on March 2, 2000, petitioner was driving erratically. He could see petitioner opening plastic bags and shaking out what appeared to be a white powdery substance onto the roadway. *See* Resp't Ex. I at 147. After Hernandez was pulled over, the police found one small glassine bag on the side of the road that contained a white powdery substance. *Id.* at 148. In petitioner's vehicle, the police found a collection of small glassine envelopes used for the distribution of narcotics. All of these glassine envelopes were admitted into evidence at trial. *See id.* at 243-44; 300.

**iii. Sufficiency of the Evidence Analysis**

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."'" *Jackson v. Virginia*, 443 U.S. at 315 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* at 317. Accordingly, "in a challenge to a state criminal conviction

brought under 28 U.S.C. § 2254–if the settled procedural prerequisites for such a claim have otherwise been satisfied–the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

Petitioner bears a "very heavy burden" in attempting to obtain a writ of habeas corpus based upon an "insufficiency of the evidence claim." *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.) (citations omitted), *cert. denied*, 462 U.S. 1108 (1983); *accord*, *e.g.*, *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (stating that a "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); *United States v. Middlemiss*, 217 F.3d 112, 117 (2d Cir. 2000); *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). The habeas court's review of the jury's factual findings is limited, and the court may not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the Supreme Court explained in *Jackson*,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 318-19 (citations omitted); *accord*, *e.g.*, *United States v. Middlemiss*, 217 F.3d at 117.

To convict a petitioner on a charge of third degree criminal sale of a controlled substance, a prosecutor need only prove beyond a reasonable doubt that the petitioner "knowingly and

unlawfully [sold] . . . a narcotic drug[.]" N.Y. Penal Law § 220.39(1). The testimony presented by the two confidential informants that they went into petitioner's apartment with no contraband on them, asked petitioner for a quantity of heroin, paid petitioner the buy-money and received the heroin in exchange, and then immediately turned over the heroin to the police, sufficiently establishes that Hernandez knowingly and unlawfully sold an unlawful drug. *Accord*, *e.g.*, *Peralta,* 2001 WL 800071, at *5 (rejecting habeas claim that evidence to establish elements of N.Y. Penal § 220.39(1) was insufficient where undercover officer saw petitioner exchange with Rojas a glassine envelope, later discovered to contain cocaine, for money). This testimony, if credited by the jury, showed that Hernandez sold heroin to the informants and, given the circumstances of the exchange, that his sale was knowing and unlawful.

"A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: 1. a narcotic drug with intent to sell it. . . ." N.Y. Penal Law § 220.16(1). "Because direct proof of an individual's intent [in third degree possession cases] is typically lacking, this [intent] element is generally established circumstantially by evidence of the person's conduct and/or statements." *Matter of Anthony L*., 226 A.D.2d 101, 101-02 (App. Div. 1st Dept. 1996). Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found Hernandez guilty beyond a reasonable doubt of third degree criminal possession of a controlled substance with the intent to sell based on the above-described testimony. Hernandez's negotiations with and sales to the two informants, and his subsequent actions and admissions about the source of his drugs provide "sufficient evidence of a drug-selling enterprise and of salesperson-like behavior from which a reasonable juror could infer that [petitioner] intended to sell [heroin] in his possession[,]"*Wilson v. Senkowski*, 2003 WL

21031975, at *10 (citing, *inter alia*, *Montalvo v. Newton*, 98 Civ. 8665, 2001 WL 1399527, at *6 (S.D.N.Y. Mar. 23, 2001) (denying habeas claim re weight of evidence in third degree criminal possession of narcotics case: "proof of other contemporaneous drug sales may be offered to establish a petitioner's intent to sell the substances that he is accused of having possessed"); *see also People v. Laws*, 27 A.D.3d 1116, 1117 (App. Div. 4th Dept. 2006) (holding that conviction on criminal possession of a controlled substance with intent to sell supported by sufficient evidence; circumstantial proof that defendant had been involved in prior drug transactions admissible to establish that he had the requisite intent to sell the cocaine) (citing *People v. Alvino*, 71 N.Y.2d 233, 245 (N.Y. 1987)).

"A person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells [drug paraphernalia]." N.Y. Penal Law § 220.50. After petitioner's car was stopped, glassine bags and a small quantity of drugs were found inside; he was seen throwing glassine bags containing a white powdery substance out the window. *See United States v. Gordils*, 982 F.2d 64, 71-72 (2d Cir. 1992) (holding that evidence was sufficient to convict defendant of possession of heroin because jury could have reasonably concluded that defendant knowingly had the power and intention to exercise dominion and control over heroin found in apartment, based on the discovery of heroin, glassine envelopes, diluents, and other materials used to prepare heroin for distribution lying in plain view in living room in which defendant was sitting). Glassine bags such as the ones introduced at petitioner's trial are known to be regularly used in the sale of heroin. *See United States v. Main Street Distributing Inc.*, 700 F.Supp. 655 (E.D.N.Y. 1988) ("In fact, the routine use of small glassine or plastic bags in the retail distribution of narcotics is something with which virtually every judicial officer in the New York

metropolitan area is familiar.") (citing *United States v. Cruz*, 797 F.2d 90 (2d Cir. 1986); *United States v. Simmons*, 786 F.2d 479 (2d Cir. 1986); *United States v. Cruz*, 785 F.2d 399 (2d Cir. 1986); *United States v. Ayala*, 769 F.2d 98 (2d Cir. 1985); *United States v. Carson*, 702 F.2d 351 (2d Cir.), *cert. denied*, 462 U.S. 1108 (1983)).

It is true that both informants had criminal records and drug addictions; however, they freely admitted these aspects of their personal history. The police witnesses and other prosecution witnesses testified without any appreciable impeachment. The jury had ample opportunity to view the witnesses' demeanor and assess their credibility; to the extent that petitioner asserts that these witnesses' testimony included contradictions, he had the opportunity to highlight these to the jury at trial. Nevertheless, the jury chose to believe the prosecution witnesses' testimony despite any inconsistencies. Any claim by petitioner that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury. *See Maldonado v. Scully*, 86 F.3d at 35 ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."); *United States v. Vasquez*, 267 F.3d 79 (2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility.") (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility.") (citing *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir. 1985)); *Glasser v. United States*, 315 U.S. 60, 80 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."), *superseded by statute*, *in part*, *as recognized in Bourjaily v.*

*United States*, 483 U.S. 171, 181 (1987); *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) ("The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence and the character testimony. We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence.").

After reviewing all of the evidence presented at Hernandez's trial in the light most favorable to the prosecution, it is clear to the Court that there was more than sufficient evidence as to each and every element of each and every offense on which petitioner was convicted. Indeed, the evidence against petitioner was compelling. Accordingly, based on the testimony presented at trial, it was entirely rational for the jury to return the verdict convicting Hernandez as it did. Habeas relief is therefore not warranted on this claim.

**3. The Sentence Was Not Harsh and Excessive**

In his petition, Hernandez asserts only that his "sale of two vials of crack, 1.9 grains per vial, did not warrant a sentence of 7 ½ to 15 years, compared to defendant's co-defendant's sentence of one year for the same sale." Petitioner at 2-3 (Docket No. 1). The Court is unsure as to which "co-defendant" Hernandez is referring, as he was sole defendant at his trial, and he was convicted of possessing and selling heroin. Furthermore, the initial aggregate sentence imposed was an aggregate of two consecutive sentences of 5 to 10 years and 9 to 18 years, not 7 ½ to 15 years. The Court will overlook these discrepancies and instead rely on the argument made by appellate counsel regarding petitioner's sentences.

On direct appeal, the state appellate court found that the consecutive sentences of 5 to 10 years and 9 to 18 years, aggregating in a sentence of 14 to 28 years, were unduly harsh and severe. Accordingly, it modified the judgment in the interest of justice and as matter of discretion

by directing that all sentences run concurrently, reducing the aggregate term of incarceration to 9 to 18 years. Thus, petitioner *did* succeed on his claim in state court that his sentence was harsh and excessive, and obtained a reduction.

In any event, as respondent argues, this claim does not present a federal constitutional question cognizable on habeas review. *White v. Keane*, 969 F.2d 1381, 1382 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979). Hernandez's sentence, even before the modification by the state appellate court, was within the limits set by New York's Penal Law. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d at 1383.

Criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39(1)) was the highest felony (Class B) for which petitioner was convicted; he was convicted of three counts. As a second felony offender, pursuant to N.Y. Penal Law § 70.06(3)(b), petitioner had to be sentenced to a minimum of 9 years and up to a maximum of 25 years. Furthermore, pursuant to N.Y. Penal Law § 70.06(4)(b), the trial court had to set the minimum term for a Class B felony at one-half of the maximum imposed. Petitioner also was convicted of several Class D felonies: three counts of a criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03) and one count of criminally using drug paraphernalia in the second degree (N.Y. Penal Law § 220.50(2)). Thus, assuming that all sentences were set to run concurrently, petitioner could have been sentenced under New York's Penal Law to an aggregate term of 12 ½ to 25 years. Following the modification so that the sentences would run concurrently, petitioner's aggregate term is how 9 to 18 years, which is less than the statutory maximum of 12 ½ to 25 years. Therefore, his claim that his present sentence is harsh and excess does not present a federal

constitutional question cognizable on habeas review.

**4. Trial Counsel Provided Effective Assistance**

In assessing a claim of ineffective assistance of trial counsel, the Court is guided by the two-pronged standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). To prevail on such a claim, a defendant must show both that his attorney's conduct fell below an objective standard of reasonableness under prevailing professional norms, and that he was prejudiced by counsel's unprofessional conduct. The "prejudice" prong of the *Strickland* test requires the defendant to show that but for counsel's mistakes, there is a reasonable probability that the outcome of the trial would have been different. *Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

Hernandez argues that trial counsel was ineffective because he failed to call Hernandez's girlfriend, Myrna Martinez ("Martinez"), as a witness. Apparently, Martinez was on the witness list and trial counsel intended to call her in an attempt to show that her voice was on most of the audio tapes and that she " most of the talking." *See* Resp't Ex. I at 347. However, trial counsel explained, "When the trial began, . . . she was in jail. So I didn't subpoena her because I thought I would have easy access to her being next door. I found out yesterday she has been released. I don't know where she resides." Resp't Ex. I at 327. After the trial court comment, "The key word is 'subpoena[,]'" trial counsel stated, "She's not a witness that would benefit, but it does seem natural that the People might call her as the evidence [audiotapes of the drug sales] is played. It seems she's present in each and every one of these transactions." Resp't Ex. I at 327. At that point, trial counsel ostensibly abandoned Martinez as a prospective witness. He did, however,

later request a missing charge, Resp't Ex. I at 336-37, which the trial court declined to give. The trial court said that nothing "prevent[ed] trial counsel from arguing" the adverse inference and, during his summation, trial counsel attempted to shift the blame for the drug sales onto Martinez. Resp't Ex. I at 341, 344 ("Their [the prosecution's] own transcript has an unknown male say, 'you are going to fucking like this shit.' They didn't attribute that term to my client. Their own transcript says Myrna Martinez answered the door. And throughout this whole thing Myrna Martinez is doing most of the talking.").

The decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987); *accord United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999). Such decisions, "if reasonably made, will not constitute a basis for an ineffective assistance claim." *Id.*; *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."), *cert. denied*, 123 S.Ct. 1949 (2003). Here, it obviously would have been better practice for trial counsel to have planned in advance for the contingency of Martinez being released from jail. However, based on the colloquy regarding the subpoena, it does not appear to this Court that trial counsel's strategy as to Martinez was "set in stone"; even at that time, he seemed to be considering requesting an adverse inference/missing witness charge instead. In the end, the strategy that trial counsel utilized–requesting a missing witness charge and arguing the adverse inference during summation–was not objectively unreasonable in light of the circumstance and prevailing norms of professional practice. *See Strickland*, 466 U.S. at 690-91. The general rule,

according to the Supreme Court is that

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91; *accord*, *e.g.*, *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). Based on this precedent, the Court cannot say that trial counsel's performance in this regard was constitutionally deficient.

More important, Hernandez has not attempted to show, nor can he show, prejudice as a result of trial counsel's decision not to call the witness. On direct appeal, appellate counsel merely made the conclusory statement that occasionally, the failure to "call a key witness . . . can be prejudicial enough to a defendant to require a new trial." Resp't Ex. K at 7. Appellate counsel stated that such was the case at Hernandez's trial, but he did not articulate why. *See id.* In his papers in support of his habeas petition, Hernandez has never elaborated how he was prejudiced. Leaving aside the fact that Martinez cannot be considered a "key" witness, Hernandez has completely failed to demonstrate a reasonable probability that the outcome of his trial would have been different hat Martinez testified. His inability to show prejudice dooms his ineffective assistance of counsel claim; habeas relief will not issue on this claim.

## IV. Conclusion

For the reasons stated above, Juan Hernandez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Hernandez has

failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

---

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: April 25, 2007
Buffalo, New York.